Good morning. I'm Thomas Beck for Mr. Hroscikoski and I'm pleased the court actually pronounced his name correctly, one of the few people that's ever had anything to do with the case. We're here to seek reversal of a summary judgment ruling against Mr. Hroscikoski based upon probable cause in this incredible trespass case. There's really two levels to this appeal in my judgment. One is that given the material disputed facts before the trial court on the defense motions that he had the protection of Rule 56 so as not to be knocked out on summary judgment. His version of the facts was entirely inconsistent with the defense version of the facts and on that level he should not have been thrown out of court. Second was the issue that I hold dear here and that is the facts according to the defendants was precluded by the superior court's ruling on the 991 motion. If that court had only the defense version of the facts before it at the time it ruled and it held if you take those facts in the light most favorable to the opposing party, there was not probable cause for a trespass arrest under any stretch of the imagination. When keeping in mind this gentleman was arrested for trespassing when he was watching television in the apartment of a tenant of this house. Well, not quite. He was arrested for trespassing after he had been there two or three times, been told to leave, left and started to come back again. That's when he was arrested for trespassing. But that's disputed. No, that part is not disputed. Indeed it is, Your Honor. What's disputed about it? Because when Mr. Are you referring to the moment of the arrest? Yes. Okay. Mr. Horsakowski was summoned out of Alex Fortune's apartment. Yes. At Officer Cohen's behest. Right. He left the building. He wasn't arrested. He left the premises. That's correct. And he started to come back. Negative. That's not his testimony. Well, I am very carefully not saying that he came back onto the property. I'm saying he turned, started to talk to the officer, called him a Nazi or whatever, said is this Iraq and blah, blah, blah, and that's not disputed. And started in the direction of coming back onto the property. That's not correct, Your Honor. That's not. Okay. So he said it with his back to the property. Okay. What difference does it make? The point is he never returned. That's Officer Cohen's version. That's not the plaintiff's version. Mr. Horsakowski stood in the parking lot with his backpack and demanded the officer identify himself, too, so he could make a complaint about being expelled from this fellow's apartment. It was at that moment that the officer arrested him. You're going to jail. He made no advance on the stairs. Actually, at that point, he went and got Rabin. And Rabin, he said, are you going to make a citizen's arrest? He said yes and came back out. Those aren't the facts, Your Honor. Okay. If you look carefully at the record, and this is particularly true of the, well, first of all, Rabin claims he didn't see anybody. He was indoors. He only heard from outside. Officer Cohen's version is that he let the fellow go, the plaintiff go. He called, he says, what is this, Germany, which is a misplaced statement, and then said you're under arrest. Went back and got Rabin, and Rabin goes to the radio car where he's already in custody. He's already in the back of the radio car and then does the incantation of a citizen's arrest. Mr. Horsakowski's version of those facts was I stood in the parking lot, I had my property, I was about to leave, I asked the officer to identify himself. I did not go toward the front of the building. I remained in the parking lot. The officer came and got me and arrested me in the parking lot adjacent to the St. James Hotel. I did not, as the officer claims, start marching up the sidewalk or toward the front door of the place as if I was going back. That didn't happen, and if that's the court's focus, then the facts on the plaintiff's side should have prevented the summary judgment motion from taking place. On the other hand, you know, we have this trespass issue, and whether or not under the Glendale Municipal Ordinance or whether it's under state trespass law, as an invited guest, he has no, he's got an absolute right to be there, and not the manager and not the law enforcement authority had the right to expel him. And there are some other issues that I'd like to address concerning the non-federal claims, but there was the recent Venegas decision which refuted the court's basis for granting the claim, which he didn't want to recognize, and I don't understand that why. And then there was the key issue on whether or not state court recognizes the claim for negligent employment against on-duty police officers, and I'll defer to my brief on that because there's a lot of law, and I pointed out the error of the Van Orck decision, which I don't have to be confused. Factually speaking, there was not probable cause, and whether or not there's privity or there is privity, he was protected against summary judgment on the disputed issue of material fact, and I'll save some of my time for rebuttal. Okay, sure. Good morning, Your Honors. May it please the Court. Anne Maurer for Defendants of Nepalese City of Glendale and Officer Brian Cohen. The Court is correct that the facts are undisputed that once Mr. Husikowski left the building, he did start to walk away, but then he turned and started shouting, this is Nazi Germany, I don't have to leave, and did in fact start coming back toward the building, and that was the point at which Officer Cohen decided that there was probably going to be an arrest and went to get Mr. Rabine to determine if he wanted to make that arrest. So, in fact, the facts are undisputed. I don't believe the evidence is that Mr. Husikowski remained in the parking lot, because, in fact, it was his acknowledgment that by saying this isn't Nazi Germany, it was his protest that he did not, in fact, have to leave the building and no one could tell him to do so, and that was the undisputed evidence. The issues of privity, Mr. Beck hasn't really raised anything new, and I would submit on my briefs I don't think anything new has been, I can offer anything new other than was in my brief on that point. As to the UNRWAC claim, the city did not argue that there had needed to be any racial issue, and even though Judge Lew did determine it on that ground, we raised it on the grounds that the basis for the cause of action just wasn't in the evidence, and obviously that can be affirmed on any ground on appeal. I actually am going to reserve some time for my co-counsel, but I have nothing more to add than other than what was in my papers. Okay. Mr. Stilson? Good morning. May it please the Court, my name is Guy Stilson. I'm from the law firm of Lowell Ball and Lynch in San Francisco. I represent Thomas Rabin, Penelope Hitch, and Thomas Hitch. First and perhaps most importantly with regard to Mr. Rabin, Mr. Rabin did go through the bankruptcy procedure, did obtain a bankruptcy discharge. Plaintiff did not challenge that. Plaintiff did not go through the mandatory procedure in order to keep alive a claim against Mr. Rabin. Mr. Rabin is entitled to a full and complete dismissal on that basis alone. Well, on that, I should say on that basis with regard to many other bases. With regard to the 1983 claims, the claims against my clients are based on an alleged conspiracy. There is simply no evidence here to find a conspiracy. The evidence upon which plaintiff relies does not make sense. His theory is pure speculation. It's based on an unspoken IOU that my client supposedly owed to the Glendale Police Department when the plaintiff made the decision not to arrest my client on a day prior to the time when plaintiff was arrested. If my client owed anybody an unspoken IOU, it was to the plaintiff. Moreover, there simply wasn't an opportunity here for conspiracy. In order for there to be a conspiracy when my client performed a citizen's arrest, he would have had to have understood that Officer Cohen had made a bad arrest. There's no evidence to that effect. There's no evidence that Officer Cohen thought he'd made a bad arrest. My client would then have had to have thought that he could somehow not cure it, because if he could cure it, there's no conspiracy. He's doing the right thing. But cover it up by making his own citizen's arrest. The evidence is undisputed that Mr. Rabin was acting in good faith, that he felt he had a duty to effect a citizen's arrest. He had seen the plaintiff on the property many times, had told the plaintiff that he could not be on the property, had seen Glendale police officers tell the plaintiff that he was trespassing, that he could not be on the property. He was asked by Officer Cohen if he would like to perform a citizen's arrest. My client has a right to rely on Officer Cohen's opinion of the law as to whether or not he can perform a citizen's arrest. Moreover, with regard to a citizen's arrest, the standard is not probable cause. It's really good faith. If my client had a reasonable, good faith belief that he could, that the plaintiff had committed a crime, and I think there is more than ample evidence to find that he did, then the arrest, the citizen's arrest, was perfectly valid. Moreover, I think that there is evidence that the plaintiff was in fact in violation of the Glendale Ordinance on Trespassing, and also subsection L of Penal Code 602, that's subsection L as it existed at the time of these incidents. Penal Code 602 has been amended many times and has been amended since this, and L is now, I believe, M or N. But that basically says that unless you have the permission of the owner of the property, and in this case that permission had been specifically revoked, coming onto the property is trespassing. Well, Mr. Beck relies heavily on the fact that he was actually on the premises with the permission at the invitation of a tenant in the building. He does rely on that, yes. There's no exception for that under the ordinance. There's no exception for that under what in 2000 was subsection L of Penal Code 602. And moreover, I don't think my client can be charged with understanding that there would be that kind of technical exception to this law. There was abuse of the shower privilege. Mr. Rabin had told the plaintiff on many occasions that he was not allowed to use the shower because he was not a tenant. Mr. Korshen was aware of this policy, and his testimony seemed to be that if he believed that a plaintiff was going to be using the shower, he was telling plaintiff, oh, that's for tenants only. You can't do that. So this use of the shower exceeded the scope of permission that Korshen may have given. Korshen, in fact, was not allowed to give. So I think from the point of view of whether or not my client had a reasonable good faith belief, that by returning to the property after being told he could not do that by the police department, by the Glendale Police Department, and having Officer Cohen come up and specifically ask after Cohen has taken the plaintiff, put him in handcuffs, put him in the back of a police car, told the plaintiff that he's going to jail, at that point I don't think there can be any question but that in Mr. Rabin's mind, he believed he was doing the right thing. And there's no evidence to dispute that he believed he was doing the right thing. And I think from an objective standpoint, it's very understandable that he would have that belief under those circumstances. With regard to the state law causes of action, conspiracy to falsely arrest. Conspiracy is not a separate cause of action. False arrest, I've just discussed. The standard for my client is whether he had a good faith belief. The torts in essence go hand in hand with the matter of whether or not my client's citizen's arrest was valid. And again, I think there's absolutely nothing to dispute that it was. With regard to intentional infliction of emotional distress, the requirements for that are that the behavior supposedly leading up to the tort must be more than ordinary rude or insulting behavior. I think that's all we've got here. Moreover, the damage suffered must be so severe that no reasonable man could be expected to endure it. There's absolutely no evidence here that anything other than the allegedly false citizen's arrest of the plaintiff resulted in any emotional distress at all to the plaintiff. The plaintiff was happily defending himself at every step of the way. Negligence, I believe, has been waived with regard to all aspects except the possibility of negligent employment. Negligence is not briefed by the plaintiff except on the point of negligent employment. The Baines, or I'm sorry, UNRRA is also waived. That is not discussed by plaintiff at all in his briefs. UNRRA, of course, only applies where the plaintiff is a member of a suspect class. There's no indication here the plaintiff was a member of a suspect class. Same holds true for Civil Code Section 51. On both counts, it's waived because it's not discussed in the brief. And also that specifically requires a finding of being involved in a suspect class or I should say suspected class. With regard to 51.2, again, all of the conduct alleged as a violation of Civil Code 52.1 relates to the citizen's arrest as far as my clients are concerned. The citizen's arrest was valid. Therefore, there was no violation of the plaintiff's rights. With regard to Penelope Hitch and Thomas Hitch, they can only be held responsible for state law causes of action on a respondeat superior theory. Respondeat superior has also been waived. It is not discussed in plaintiff's brief whatsoever, so it's impossible for me to know what his arguments are going to be on that and impossible to respond to any such arguments. Also, with regard to the 1982 action, there is no respondeat superior with regard to that action. And there's no evidence that the Hitches instituted any kind of policy that was in any way violative of the plaintiff's rights. The only policy in issue is whether or not non-tenants can use the shower. That was an acknowledged policy, acknowledged by Mr. Korchin. It was a policy that was repeated to the plaintiff on numerous occasions. And unless there are any questions. I don't think so. Thank you, Mr. Beck. Thank you very much. With respect to the bankruptcy issue and the good faith defense that the ravine may or may not have, the court never addressed those in its summary judgment ruling. The house of cards that the court demolished was by pulling out the probable cause card, and that collapsed the case in all respects. Once the court determined that there was PC to arrest him for this trespass charge, everything else went away. And I submit that if that's reversed, then everything gets resurrected. For that reason, the bankruptcy issue is not before this court, nor is that good faith issue. I would submit that the intentional infliction of emotional claim against the owner of the hotel and their operator was substantiated by the evidence. To my astonishment, Judge Liu acknowledged that Thomas Rubin punched out Mr. Horsakowski when he went to ask for the identification of the owners of the building to deal with this eviction notice that had been slipped on the courtian's door the night before. And from that cascaded into this arrest, obviously. But the man spent a night in jail. He's 46 years old. He's never been arrested. Went to court, humiliated by the process, and then ended up being released and arrested again. And this is all proximate to what happened with Rabin and the hitches based upon their employment by, rather, his respondeat responsibility. I wanted to point out to the court the part of the transcript or the excerpts of record that supports my assertion that Mr. Horsakowski never left the parking lot and was not headed back to the apartment at all, rather, upon making the statements that he was snatched by the officer. That appears at the excerpts of record at 639, paragraphs 22-24, excerpts of record 634 and 640. That's the evidence either in the depositions of the parties that were before the district court. There is, in my view, sufficient evidence of the conspiracy. And what I mean by that is that if you take the version of the plaintiff and lay it against or contrast it to the collective version of the defense, there is a mutuality of understanding and agreement, even down to the point where Rabin says he heard what Mr. Horsakowski said, this is not Germany, which is precisely what Officer Cohen wrote in his report. Now, the plaintiff never made that statement, but Rabin says in uniformity with Officer Cohen that that statement was made. And I want to underscore the fact that if you take the plaintiff's version of these facts, he's in custody in direct response to the challenge to the officer. The officer recognizing that the inference is his because he's the opposing party on this motion, the inference belongs to him, that he's now in custody, he's fully arrested, this is a seizure in constitutional terms, it's not supported by probable cause, and then he goes and gets Rabin to make it look good. Rabin goes along with the program and says, yes, I arrest you for trespassing. Now, if you take Rabin's version of the facts, where's the trespass? I mean, whether it's 602L or 602M, he's got a right to be on that property. This is a residential hotel, not a commercial hotel. Mr. Korchin was, in fact, a lawful tenant. He had the right to invite Mr. Horsakowski back as often as he chose to, and neither Officer Andrews, who was the officer that came the day before, had a right to expel him. No one in law enforcement, not even the owners of the building, as I pointed out earlier, have the right to exclude a guest from a private residence, and to suggest otherwise cuts against all of our understanding of what privacy means. Mr. Korchin, and I want to address the shower rule. To me, it's a red herring. The fact that the shower rule supposedly existed, and we put evidence before the district court, that that was a Horsakowski rule. We got deposition testimony from Mr. and Mrs. Hitch. We got deposition testimony from two of the tenants. That rule was nowhere. It applied only to John Horsakowski. And we tried to find evidence of it in the lease agreements. We tried to find evidence of the signs that were posted, anywhere where it might have been understood. And if there was a dispute between Mr. Rabine and Mr. Horsakowski concerning the use of the showers, it had nothing to do with this arrest. He didn't take a shower on that day. He didn't take a shower for two previous days. The point was that he was arrested while watching television. That's how you judge probable cause at the moment of the arrest. He was taken out of the apartment. And the shower rule, if there ever was such a rule, has really nothing to do with whether or not Rabine could expel him. If that was a breach of the lease, if it was part of what Rabine felt that Korchin couldn't provide to Mr. Horsakowski, then it was between Rabine and Korchin. And Korchin, the evidence is plain, allowed him to do it. He gave him the key. Mrs. Hitch testified, and we had that before the court, that said, we knew that Korchin was giving him the key. That was done with consent to use this common bathroom facility. So to the extent that it has any bearing at all, it really is not a defense as the Hitch defendants would like it made out to be. In my view, the arrest came first and Rabine came later, if you take the plainest version of the facts. And I think that there's sufficient evidence in the record before the district court that if you apply the rules of who gets the benefit of the inferences, what evidence you must believe, how you approach the determination of a disputed fact issue on summary judgment, that that motion should not have been granted, that there was sufficient evidence, even putting aside the collateral estoppel issue, the affirmative collateral estoppel issue that I tried to use. And on that subject, the court relied on a 1971 decision, the Davis versus I decision, that held essentially that an officer is not in privity with the prosecution. And if you analyze that case very carefully, first it's old. And that relied on some out-of-district decision, not California law, to hold that the officer was not in privity. We've come a long way in Ninth Circuit and 1983 jurisprudence that has held in a malicious prosecution a cause of action under 1983. But if the evidence shows the police officers misled the prosecution, withheld facts from the prosecution, in other words provided the facts upon which the prosecution relied, they are responsible. They are virtually in the shoes of the prosecutor. Now why would that be different if it happens to be a privity question? I dare say it doesn't have to be different because now we're using collateral. I'm trying to use collateral estoppel to prevent them from relitigating the absence of probable cause. And the privity issue then comes because that's one of the elements of the collateral estoppel argument. I'm arguing that if a police officer is shown to have falsely fomented the litigation and misled the prosecution, as is our evidence, then they are responsible. And that, in other words, is the same as privity. There is that Patzig case out of the Eighth Circuit which went in that direction. It used local law as it must. And now I've also presented California authorities, which is the authority that the district court had to have used ever since MiGRA, which is a 1985 decision. You have to turn to California law and say, will they apply privity in circumstances such as this? And the answer is yes. The California Supreme Court in the Sims case held that there could be privity between a police officer or someone apart from the prosecution. And to the extent that there's some important decisions for this court to make, I think that that's something that the time has come for. Otherwise... I would point out that the Venegas decision supported... that is, the Venegas decision that came after the briefing in this case, supported Horsakowski's civil rights claim, Bain's claim. Now, there were three parts of it, and the only part that really applied to him was the 52.1. I'm not arguing with others, because that wasn't really part of the case. What I am arguing, and what is before the court here, is that under his 52.1 claim, which the district court said is gone because you're not showing yourself to be a member of a protected class, the California Supreme Court said you needn't be one. And I think that that's plainly wrong. I mean, that's an error that this court should correct. And it's my position that if you take the totality of the circumstances without saying much more, I think in fairness, he's entitled to his day before a jury trial. Let them decide whether the plaintiff's version is correct or whether the defense version is credible. Thank you. All right. Counsel, thank you for your argument in this matter, and the matter just argued to be submitted. Next to your argument in Raceway Properties. Thank you very much.
judges: Browning, Magill, Rymer